801 AVENUE C, INC., PLAINTIFF-RESPONDENT, v.
CITY OF BAYONNE, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 4, 1974—Decided March 5, 1974.

Before Judges HANDLER, MEANOR and KOLE.

*Mr. M. Stanley Susskind* argued the cause for appellant.

*Mr. William M. Feinberg* argued the cause for respondent (*Messrs. Feinberg, Dee and Feinberg,* attorneys).

The opinion of the court was delivered by

KOLE, J. S. C., Temporarily Assigned. Before 1969 the zoning ordinance of the City of Bayonne, adopted in 1945, provided for a "C" residence district (one-family dwellings), an "A" residence district (dwellings without limitation as to height or number of units) and a "B" residence and light industrial district (mixed uses for residence and light industry). As a result over 1,000 apartment houses were built, scattered throughout the city as follows: 891 — 3 stories; 2 — 3½ stories; 92 — 4 stories; 31 — 5 stories and over.

Prompted by notification from the Federal Government that the city might not be certified for a workable building program because its mixed uses resulted in built-in blight, the officials of the city in 1957 commenced extensive professional planning and zoning programs. After a number of comprehensive studies, plans and reports, a proposed revision of the zoning ordinance was prepared by Geiger & Associates in 1966. Many public hearings, as well as meetings with representatives of the various districts involved, were held.

Thereafter, in 1969, a new zoning ordinance was adopted to replace the 1945 enactment. That created two residence districts: R 1 (one-family residences) and R 2 (a general residence district permitting multi-family dwellings). Article 12, paragraphs 1201 and 1206, of the new ordinance limits the construction of multi-family dwellings in the R 2 zone to those with a maximum height of 2½ stories and 35 feet, and containing no more than six dwelling units. The ordinance does not permit apartment houses of greater height or more units in any zone other than a special Urban Renewal Zone. The latter authorizes multi-family residences not to exceed three stories or 45 feet in height, with a max-

imum of 36 units per acre for garden apartments and 48 units per acre for two-family townhouse use.[1] The evidence also indicates that a contemplated ten-story building on 24th Street is being or may be built by the Housing Authority of Bayonne under federal sponsorship to which, according to City Council President Collins, the zoning ordinance does not apply.

We sometimes hereafter refer to multi-family dwellings in excess of the height and unit limitations of Article 12, paragraphs 1201 and 1206, as high-rise apartment houses.

The owner of premises in an R 2 zone, known as 801 Avenue C, which it acquired in 1971, desired to raze an old frame dwelling and erect a six-story apartment house with 16 dwelling units. It instituted this action to have the Article 12 prohibitions referred to set aside as invalid. After a hearing the court granted the relief sought, not only as applied to plaintiff's land but also to all lands in the R 2 zone. This appeal by the city followed.

Except to the extent indicated below, we adopt, as supported by the evidence, the findings of fact made by the trial court.[2] We also agree with its conclusion that the "[mo-

[1]The city's planner, Geiger, testified that the density limitations were 60 units per acre in the Urban Renewal Zone. We assume this is in error. See Article 22, par. 2b 1(a), of the 1969 ordinance.

[2]Of course, we defer to the court's opportunity to observe and determine the credibility of the witnesses who testified. Although the findings we hereafter refer to are not necessary for a determination of this appeal, we deem it desirable to comment thereon, since we are not clear that the sparse record below supports them or that credibility factors are involved in their resolution.

That the municipal officials in a *pro forma* fashion asserted that the zoning limitations will lessen congestion and provide more light and air, and fire and traffic control safety, does not necessarily mean that they were merely mouthing the statutory standards for zoning purposes. As we view the evidence, further examination may have given some factual content to such testimony. The city's planning expert testified that the scattering of high-rise apartments throughout the city might make it difficult to define districts or a district permitting higher buildings for housing. That his originally planned

tivation] in adopting the ordinance of resolving future applications for apartment houses in excess of the height and unit restrictions by administrative controls is not in accordance with a comprehensive plan; is beyond the power of the municipality and is contrary to the purposes and methods of zoning set forth in the enabling statutes." Accordingly, the judgment is affirmed on that ground alone. See *Glen Rock, etc. v. Glen Rock Bd. of Adj.*, 80 *N. J. Super.* 79, 89 (App. Div. 1963) ; *Raskin v. Morristown*, 21 *N. J.* 180, 184, 191 *et seq.* (1956).

Thus, we have no occasion to consider the soundness of the court's alternative basis for invalidating the provisions of the ordinance involved — *i. e.*, that under the facts it is unreasonable or arbitrary zoning in a fully developed municipality such as Bayonne, with over 1,000 high-rise apartment houses located throughout its residence districts, to preclude further development of multiple dwellings in excess of the limitations set forth in the ordinance. We need not determine, therefore, whether the cases cited for that proposition by the court support it in this case.[3]

zoning revision provided such a definition does not reasonably preclude a different conclusion by him and the municipal officials in 1969 after public hearings and further reflection. Moreover, it cannot be said that consideration of the interests of owners of one-and two-family residences invaded by high-rise apartment houses are not a legitimate municipal concern in zoning, provided, of course, the statutory zoning criteria are met in the ordinance enacted. See *Vickers v. Gloucester Tp. Comm.*, 37 *N. J.* 232 (1962), *cert.* den. 371 *U. S.* 233, 83 S. Ct. 326, 9 L. Ed. 2d 495 (1933) ; *Kozesnik v. Montgomery Tp.*, 24 *N. J.* 154 (1957) ; *Harvard Ent., Inc. v. Madison Tp. Bd. of Adj.*, 56 *N. J.* 362 (1970) ; *Ohrinko v. So. Brunswick Tp. Plan. Bd.*, 77 *N. J. Super.* 594, 605 (Law Div. 1963) ; *L. P. Marron & Co. v. River Vale Tp.*, 54 *N. J. Super.* 64 (App. Div 1959) Additionally, although the design of the ordinance was to maintain control over new high-rise rental units through its administration, we cannot conclude that its purpose was also to maintain control in this fashion over expansion of the number of residents.

[3]See, *e. g., Zampieri v. River Vale Tp.*, 29 *N. J.* 599 (1959) ; *Scarborough Apts. v. Englewood*, 9 *N. J.* 182 (1952) ; *Bogert v. Washington Tp.*, 25 *N. J.* 57 (1957) ; *Ingannamort v. Fair Lawn*, 133 *N. J.*

At the trial and before us the city conceded that although Bayonne is fully developed, there is a need and demand for additional rental housing units and that it did not intend by the ordinance completely to prohibit the further construction of apartment houses in excess of the limitations set forth therein. Instead, it proposed to administer the ordinance through the procedure of board of adjustment variances and planning board site plan approval on a case by case basis. An applicant would be able to obtain a permit to build at a specific location if he could satisfy the requirements for the grant of a variance and, in addition, the planning board found compliance with the provisions of the ordinance, that the plan was conducive to the orderly development of the area as well as the site in question, and that all off-site improvements, such as curbing, paving, width of existing streets and drainage that would be affected were sufficient for the proposed use.[4]

The question before us, then, is not whether a fully developed municipality with over 1,000 dispersed apartment houses, many of which exceed three stories, must provide for more; nor is it necessary to decide whether such a municipality may at some point by zoning ordinance draw a line as to height or density requirements with respect to further multifamily dwellings. See *Fanale v. Hasbrouck Heights, 26 N. J.* 320 (1958); *Vickers v. Gloucester Tp. Comm., supra,* 37 *N. J.* at 263 (1962) (dissenting opinion); *Guaclides v. Englewood Cliffs,* 11 *N. J. Super.* 405 (App. Div. 1951). *Cf.*

---

*L.* 194 (Sup. Ct. 1945); *Wilson v. Mountainside,* 42 *N. J.* 426 (1964); *Raskin v. Morristown,* 21 *N. J.* 180 (1956). *Cf. Mountcrest Est. Inc. v. Rockaway Mayor, etc.,* 96 *N. J. Super.* 149, 154 (App. Div. 1967), certif. den. 50 *N. J.* 295 (1957).

[4]Since the provisions here involved are invalid for other reasons, we need not decide whether the standards for planning board site approval under § 903 of the ordinance pass muster under *N. J. S. A.* 40:55–1.13. See *Wilson v. Mountainside, supra,* 42 *N. J.* at 447; *Brundage v. Randolph Tp.,* 54 *N. J. Super.* 384, 395 (App. Div. 1959), aff'd o.b. 30 *N. J.* 555 (1959); *Guaclides v. Englewood Cliffs Mayor, etc.,* 119 *N. J. Super.* 403 (Law Div. 1972).

*Oakwood at Madison, Inc. v. Madison Tp.,* 117 *N. J. Super.*
11 (Law Div. 1971), certif. granted 62 *N. J.* 185 (1972).
See also, *Shipman v. Montclair,* 16 *N. J. Super.* 365 (App.
Div. 1951).

■ What invalidates this ordinance is the conceded in-
tent of the municipal officials in enacting and administering
it. Admittedly, its purpose is to meet high-rise apartment
housing needs on an *ad hoc* basis through the mechanism of
variance and planning site approval, rather than in accor-
dance with a comprehensive plan or other permissible objec-
tive zoning criteria. That kind of enactment violates the
standards and purposes required to be met by a zoning or-
dinance under *N. J. S. A.* 40:55-30, 31 and 32. *Wilson v.
Mountainside, supra,* 42 *N. J.* at 443-447; *Rockhill v. Ches-
terfield Tp.,* 23 *N. J.* 117 (1957); *Davidow v. South Bruns-
wick Tp. Bd. of Adj.,* 123 *N. J. Super.* 162, 166 (App. Div.
1973); *Kozesnik v. Montgomery Tp., supra,* 24 *N. J.* at 170.

■ We also note the absence in the ordinance of any pro-
vision authorizing any such apartment house as a permitted
use in specific districts or throughout the municipality, but
requiring approval as a special exception. Such special ex-
ception could be granted by the board of adjustment, with or
without further approval by the governing body, provided
certain protective measures are imposed, and reasonably ade-
quate and appropriate standards therefor are set forth in
the ordinance. See *N. J. S. A.* 40:55-39(b); *Tullo v. Mill-
burn Tp.,* 54 *N. J. Super.* 483, 490-491 (App. Div. 1959);
*Verona, Inc. v. West Caldwell, Mayor, etc.,* 49 *N. J.* 274
(1967); *Kozesnik v. Montgomery Tp., supra,* 24 *N. J.* at
178.; *Roman Catholic Diocese of Newark v. Ho-Ho-Kus,* 47
*N. J.* at 224 (1966), concurring opinion; *Harvard Ent. Inc.
v. Madison Tp. Bd. of Adj., supra* and concurring opinion
56 *N. J.* at 370 (1970); *Davidow v. South Brunswick Tp.
Bd. of Adj. Tp., supra; Schmidt v. Newark Bd. of Adjust-
ment,* 9 *N. J.* 405, 422 (1952); 2 *Yokley, Zoning Law and
Practice* (3d ed.), §§ 15-1, 15-2, and 1972 Supp. at 72. See

also, generally, dissenting opinion in *Vickers v. Gloucester Tp. Comm., supra,* 37 *N. J.* at 252 *et seq.*

We assume that the variance and planning board procedures contemplated by the 1969 ordinance would have been administered by the municipal agencies involved fairly, objectively and in accordance with applicable legal standards. Nevertheless, an ordinance such as this, which by design and in effect invites such departures from its ostensible prohibition against high-rise apartment house use, is to that extent no zoning ordinance at all.

For the foregoing reasons we affirm the judgment declaring paragraphs 1201 and 1206 of § 12 invalid as applied to plaintiff and to all lands in the R 2 zone.